UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X
1199 SEIU UNITED HEALTHCARE WORKERS
EAST,

                    Plaintiff,

PARKVIEW CARE AND REHABILITATION                    COMPLAINT
CENTER,

                    Defendant.
------------------------------------------------------ x



          Plaintiff, 1199 SEIU UNITED HEALTHCARE WORKERS

EAST ("Plaintiff" or "Union"), by its attorneys, Meyer, Suozzi,

English & Klein, P.C., as and for its Complaint respectfully

alleges as follows:

### NATURE OF PROCEEDING

          1.    Plaintiff sues to confirm a labor

arbitration award pursuant to Section 301(c) of the Labor

Management Relations Act ("LMRA"), 29 U.S.C. Section 185(c).

### JURISDICTION

          2.    This Court has jurisdiction over this

proceeding pursuant to Section 301(c) of the LMRA, 29 U.S.C.

Section 185(c).

### VENUE

          3.    Venue is proper in this District pursuant to

Section 301(a) of the LMRA, 29 U.S.C. Section 185(a).

**THE PARTIES**

4.    Plaintiff Union, whose offices are located at 310 West 43rd Street, New York, New York, is a labor organization within the meaning of Section 2(5) of the LMRA, 29 U.S.C. Section 152(5).

5.    Defendant Parkview Care and Rehabilitation Center ("Parkview") is an employer within the meaning of Section 2(2) of the LMRA, 29 U.S.C. Section 152(2).  Parkview's activities affect commerce within the meaning of Sections 2(6) and 2(7) of the LMRA, 29 U.S.C. Section 152(6) and (7).

**BACKGROUND**

6.    Parkview is bound by the collective bargaining agreement between the Union and the Long Island Healthcare Association, a multiemployer bargaining association. That collective bargaining agreement is set forth in a series of Memoranda which are attached at Exhibit 1 (together, the "CBA").

7.    The CBA requires Parkview to contribute to various employee benefit plans on behalf of its employees.  The rates of contribution due to those plans are set forth in the Memoranda in Exhibit 1.

8.    The employee benefit plans include the 1199/SEIU Greater New York Pension Fund ("Pension Fund"), 1199/SEIU Greater New York Benefit Fund ("Benefit Fund"), 1199/SEIU Greater New York Education Fund ("Education Fund"), 1199/SEIU Greater New York Job Security Fund ("Job Security Fund"), and 1199/SEIU Greater New York Child Care Fund ("Child Care Fund")(together, the "Funds").

9.    In accordance with the CBA, any unresolved dispute concerning an employer's failure to make required contributions to the Funds is submitted to a designated Arbitrator to render a final and binding decision.

## AS AND FOR ITS FIRST CAUSE OF ACTION

10.    The Union repeats and realleges the allegations set forth in paragraphs "1" through "9" as stated above.

11.    In accordance with the CBA, the Union submitted to arbitration before a duly designated Arbitrator, Martin F. Scheinman, Esq., a dispute concerning Parkview's failure to remit contributions to the Funds due and owing for the period November 1, 2006 through August 31, 2007.

-3-

12.   In accordance with notice duly given, Arbitrator Scheinman held multiple hearings concerning Parkview's failure to remit contributions to the Funds.

13.   After due consideration of all the evidence presented, in an award dated December 13, 2007 (the "the December 13 Award") Arbitrator Scheinman ruled that Parkview violated the CBA by failing to make the required contributions to the Funds.  A copy of the December 13 Award is attached as Exhibit 2. The Arbitrator directed Parkview to pay the Funds $861,632.53 in installments and to execute certain Confessions of Judgment.

14.   The Arbitrator sent written notice of his award to the Union and Parkview.

15.   Parkview has failed and refused, and continues to fail and refuse, to comply with the December 13 Award.  It has not made the required payments and has not executed the Confessions of Judgment.

WHEREFORE, the Union respectfully prays for an Order and Judgment:

1.   Confirming the December 13 Award of Martin F. Scheinman, Esq.

-4-

2.    Directing Parkview to pay the Funds the amount of $861,632.53, plus interest at the statutory rate from December 13, 2007 until payment is received.

3.    Granting such other and further legal and equitable relief as the Court may deems just and proper, together with the reasonable attorney's fees and costs and disbursements for this proceeding.

Dated:     New York, New York
           January 8, 2008

                              MEYER, SUOZZI, ENGLISH & KLEIN, P.C.



                              Lowell Peterson (LP 5405)
                              Attorneys for Plaintiff
                              1350 Broadway, Suite 501
                              P.O. Box 822
                              New York, New York  10018-0026
                              212-239-4999
                              lpeterson@msek.com

-5-

91779

MEMORANDUM OF AGREEMENT

Between

1199 SEIU UNITED HEALTHCARE WORKERS EAST
("1199" or "Union")

and

LONG ISLAND HEALTHCARE LABOR ASSOCIATION
("Association")


This Memorandum of Agreement ("MOA") shall apply to the collective bargaining agreements currently in effect between the Union and the Association ("CBAs").

1.   Continuation of Existing Terms:  All of the terms and conditions of the CBAs shall remain in full force and effect except as expressly modified in this MOA (the "new agreements").

2.   Duration:  The term of the new agreements shall be from May 1, 2007 - April 30, 2011.

3.   General Wage Increases and Increases to Minimum Rates:

   a.   Wage Increases:

      1.   October 1, 2007 - 3%

      2.   September 1, 2008 - $750 lump sum to all full-time employees (payable in one separate check), pro-rated for part-time employees based on hours paid during the 12 month calendar period immediately preceding September 1, 2008.

      3.   December 1, 2009 - 3%

      4.   December 1, 2010 - 2.25%

   b.   The wage increases in 1, 3 and 4 above shall be compounded and added to the contractual minimum rates. For non-parity facilities the wage increases shall be calculated on the minimum rates in the CBAs and shall be added to the minimum rates at such non-parity facilities.

4.    Pension Fund ("PF"):

The maximum number of years of credited service for which pension benefits may be paid shall increase effective January 1, 2011 from 25 years to 27 years. Active employees who retire on or after January 1, 2011 with 27 years of credited service shall be eligible for a pension of $999 per month (27 years x the accrual rate of $37 per month)  No pension credits shall accrue in 2008 and 2009.

5.    Benefit Fund ("BF"):

   a.    A program of savings initiatives shall be implemented that produces savings of $10 million per year effective January 1, 2008.  Should a dispute arise under this provision, it shall be subject to the trustee deadlock procedures of the BF.

   b.    The cost Savings Committee ("Committee") consisting of George Gresham and Mark Sussman, or their designees, shall continue to function.  The Impartial Chairman shall also serve on this Committee.  The functions of the Committee shall include establishing a base line for measurement, setting benchmarks and milestones, measuring the results of and monitoring the effect of the savings initiatives.  The Committee shall also seek additional ways to improve the cost efficiency of the BF.

   c.    Effective as soon as practicable, camp and scholarship benefits will no longer be provided by the BF.  Rather, they will be provided by the Child Care Fund ("CCF") at no additional cost to the Employer.  If necessary, the parties will consider diverting contributions from a Fund other than the BF or PF to fund these benefits in the CCF.

   d.    Effective September 1, 2007 legal services will cease to be provided by the BF.  As of that date, legal services will be provided by the legal plan that has been selected by the parties  The Employers shall pay to the selected legal plan the sum of $115 per full-time employee for such services, with payments to be made directly to the legal plan in September of each year.

   e.    There shall be a one (1) month reserve requirement in the BF.

6.    Pension and Benefit Fund Contributions:

   a.    The following increases shall be made in the current Minimum and Master BF contribution rates in addition to any pending increases which have been awarded by the Impartial Chairman under the CBAs:

|  |  |
|---|---|
| January 1, 2008 | 1.75% |
| January 1, 2009 | 1.75% |
| April 1, 2010 | 2% |

b.    The Employers shall contribute 4% of gross bargaining unit payroll to the BF in each of the following months: August 2007, September 2007, October 2009, and November 2009.

c.    On March 1, 2011, the Employers shall contribute $295 per full-time bargaining unit employee ($177 per part-time employee) to the BF.

d.    Effective January 1, 2010, the Employers shall contribute an additional one-fifteenth of one percent (.15%) to a Fund designated by the parties. At such time as determined by the parties, but in no event later than March 31, 2011, the .15% shall be contributed to the PF.

e.    Contributions to the BF and PF shall be allocated by the parties each year, with the advice of the BF and PF actuaries, so as to (1) fund the level of benefits in the BF and a one month reserve, (2) meet minimum funding standards in the PF, (3) fund the current level of PF benefits, (4) fund the increase to 27 years in the number of pension credits that participants may accrue in the PF, and (5) satisfy applicable federal statutes and regulations.. Because no pension credits will be accrued in 2008 and 2009, it has been estimated by the actuaries that in each of these years 4 to 5 months of Employer contributions at the Employers' PF contribution rate will be required to be made to the PF and 7 to 8 months to the BF, in addition to the Employers' contributions to the BF at their BF contribution rate.

7.    Job Security Date: Employees employed by an Employer prior to January 1, 2000 shall be protected against layoff. Effective as of May 1, 2008, employees employed by an Employer prior to January 1, 2003, shall be protected from layoff. On or about May 1, 2010, the parties shall review (without being subject to arbitration) whether that date should be advanced. Unprotected employees laid off are eligible for benefits from the Job Security Fund.

In the event an Employer raises a substantial issue over the number of its protected bargaining unit employees (e.g., more than 75% of the employees in a department or area are protected) the issue may be referred to a Committee made up of George Gresham, the President of the Union, and Mark Sussman, the attorney for the Association, or their designees, but shall not be subject to its arbitration process.

8.    Contract Administrators: The Contract Administrators program shall continue through April 30, 2011 under the terms provided in Attachment A of the CBAs. The cost of the Contract Administrators Program shall be paid through the Worker Participation Fund.

9.    Holidays: The total number of holidays (inclusive of personal days) and premium holidays shall be as provided under the agreement between the Union and the League of Voluntary Hospitals and Homes ("League Agreement"). Incumbent LPNs shall continue to receive LPN Day as a holiday. Nothing herein shall require an employer to increase its number of holidays or premium holidays.

10.    <u>Sick Leave</u>: Effective January 1, 2008, employees may accrue up to 12 sick leave days (13 for any incumbent employee who heretofore accrued 16 sick leave days; 15 for any LPN who heretofore accrued 15 or more sick leave days). Thereafter, unused sick leave days up to 12 days will be paid out or banked at the sole option of the employee. Unused banked sick days (whether accrued before or after January 1, 2008) will be paid out upon retirement at the rate of pay in effect at the time of retirement.

11.    <u>Longevity</u>: Employees hired after the ratification of this MOA shall receive longevity pay in accordance with the agreement between the Union and the Greater New York Health Care Facilities Association.

12.    <u>New Direction and Innovation Committee</u>: The Union and Industry shall establish a Committee of not less than 3 members each which shall have as its primary focus strategic planning regarding the Nursing Home Industry, the relationship between the workforce and the operators of the Industry, the relationship between the parties and government agencies as well as how to improve the job satisfaction of workers in the Nursing Home Industry. The Committee may determine its own agenda, but it is agreed the following are significant issues requiring the attention of the Committee. These are culture change, how to cost effectively provide healthcare coverage to the workforce including the question of the appropriate healthcare benefits, the issue of expanding the number of employers and employees contributing the Greater New York Funds and whether a merger of the Funds with the Funds established and maintained under the League Agreement serves the interest of the workforce and the employers and how to be ready for the transition to pay for a performance system from government entities and private payers for nursing home care.

The Committee shall also review conforming certain provisions of the CBAs (electronic transmission of Union dues, Credit Union, Political Action, and Funds Contributions, Workers Compensation Benefit accrual, discrimination, probationary period) with the corresponding provisions in the agreement between the Union and the League of Voluntary Hospitals and Homes.

Where appropriate, the Committee may seek resources from the various Greater New York Funds, outside agencies and entities in order to facilitate its work. The Impartial Chairman shall be an Ex Officio member of the Committee.

13.    <u>New Employees</u>: Paragraph 12 of the CBAs shall continue for the life of this MOA. The December 31, 2007 date in Paragraph 12 shall be extended to April 30, 2011.

14.    <u>Economic Impact</u>: The preamble to the CBA will include the following paragraph: "The Employers have reviewed the contract's economic provisions and have costed out its economic impact and state that the economic terms of this Agreement are predictable and sustainable for its term."

15.    <u>Impartial Chairman</u>:  The parties reappoint Martin F. Scheinman for a new five (5) year term as Impartial Chairman, subject to the provisions of Article 9.B of the CBAs.

16.    <u>Integrated Agreements</u>:  Integrated Agreements updating the CBAs and incorporating the terms of this Agreement shall be prepared for execution as soon as practicable.

17.    <u>Disputes</u>:  Any dispute as to the interpretation or application of this MOA shall be submitted to arbitration before the Impartial Chairman.

This Agreement is subject to ratification by the Union and the Association.

1199 SEIU UNITED HEALTHCARE
WORKERS EAST

LONG ISLAND HEALTHCARE
LABOR ASSOCIATION

By: _____

Pearl Granat,
Vice President of 1199

By: _____  7-1-0

Kenneth Winston,
Chair of the Labor
Council of LIHLA

# LONG ISLAND HEALTHCARE LABOR ASSOCIATION

## SCHEDULE A

1. Carillon Nursing Home & Rehabilitation Center
2. Cedar Lodge Nursing Home
3. Central Island Healthcare
4. Daleview Care Center
5. Glengarriff Healthcare Center
6. Ocean Promenade Nursing Center
7. Parkview Nursing Home
8. Port Jefferson Health Care Facility a/k/a Glenhaven
9. Riverhead Care Center
10. Rockville Nursing Center
11. St. James Plaza
12. St. James Healthcare Center
13. South Shore Healthcare

July ___, 2007

Ms. Pearl Granat
1199 SEIU United Healthcare Workers East
310 West 43rd Street
New York, New York 10036

Dear Ms. Granat:

With respect to paragraph 12 of the MOA executed this day, it is understood as follows:

Neither the Employer nor the Union shall discriminate against or in favor of any Employee on account of race, color, creed, national origin, political belief, sex, sexual orientation, citizenship status, marital status, disability or age. There shall be no sexual harassment in the workplace.

Very truly yours,

LONG ISLAND HEALTHCARE
LABOR ASSOCIATION

By: _____
        Kenneth Winston,
        Chair of the Labor
        Council of LIHLA

AGREED:

1199 SEIU UNITED HEALTHCARE
WORKERS EAST

By:_____
        Pearl Granat

July ⎯, 2007

Ms. Pearl Granat
1199 SEIU United Healthcare Workers East
310 West 43rd Street
New York, New York 10036

Dear Ms. Granat:

With respect to paragraphs 6.b, c, and e of the MOA executed this day, it is understood as follows:

If as a result of new employers becoming contributing employers to the BF it appears, based on the advice of the BF and PF actuaries, that the October and November 2009 4% contributions and the March 2011 lump sum contributions are not necessary to fund the BF and/or PF those contributions will not be required to be made.

Very truly yours,

LONG ISLAND HEALTHCARE
LABOR ASSOCIATION

By:   _____

       Kenneth Winston,
       Chair of the Labor
       Council of LIHLA

AGREED:

1199 SEIU UNITED HEALTHCARE
WORKERS EAST

By:_____
       Pearl Granat

July ⎯, 2007

Ms. Pearl Granat
1199 SEIU United Healthcare Workers East
310 West 43rd Street
New York, New York  10036

Dear Ms. Granat:

With respect to paragraph 6 of the MOA (Pension and Benefit Fund Contributions) executed this day, it is understood as follows:

1.      The minimum and master rates of contribution to the BF shall be as follows:

| Effective date | Minimum | Master |
|----------------|---------|--------|
| May 1, 2007 | 18.25% | 20.75% |
| January 1, 2008 | 21% | 22.75% |
| January 1, 2009 | 22.75% | 24.5% |
| April 1, 2010 | 24.75% | 26.5% |

The above rates incorporate the BF contribution rate increases set forth in the Impartial Chairman's October 2005 interest arbitration award as well as those set forth in the 2007-2011 MOA.

2.      As required in the parties' 2004-2008 MOA, in October 2007 and October 2008, the Employers shall contribute to the BF an amount equal to their contribution to the PF in addition to their contributions to the PF for such months.

Very truly yours,

LONG ISLAND HEALTHCARE
    ⎯ ASSOCIATION

By:_____
      Kenneth Winston,
      Chair of the Labor
      Council of LIHLA

AGREED:

1199 SEIU UNITED HEALTHCARE
WORKERS EAST

By:_____
      Pearl Granat

July __, 2007

Ms. Pearl Granat
1199 SEIU United Healthcare Workers East
310 West 43rd Street
New York, New York  10036

Dear Ms. Granat:

With respect to paragraph 10 of the MOA executed this day, it is understood as follows:

The parties shall discuss the possibility of providing the BF life insurance benefit outside the BF and the cost implications and potential funding sources for providing this benefit.

Very truly yours,

LONG ISLAND HEALTHCARE
LABOR ASSOCIATION

By:_____
    Kenneth Winston,
    Chair of the Labor
    Council of LIHLA

AGREED:

1199 SEIU UNITED HEALTHCARE
WORKERS EAST

By:_____
    Pearl Granat

July ___, 2007

Ms. Pearl Granat
1199 SEIU United Healthcare Workers East
310 West 43rd Street
New York, New York  10036

Dear Ms. Granat:

    This letter is delivered simultaneously with the execution of the MOA between the Association and the Union covering the period May 1, 2007 through April 30, 2011, and has the same force and effect as if set forth therein.

    The 9.65% employment credit applicable to the BF, JSF, WPF, Education Fund, and Childcare Fund, as determined by the Impartial Chairman, shall cease as of the end of the month in which this MOA is ratified by both parties. Effective as of that date, contributions shall be made to the Funds on all hours worked or paid, provided that where employers contribute on the wages of the employees who regularly work the scheduled hours, they will not be required to contribute as well on the wages of employees covering those employees when they are out on paid time off (except to the PF for employees who cover for 850 hours or more).

Very truly yours,

LONG ISLAND HEALTHCARE
LABOR ASSOCIATION

By:_____
    Kenneth Winston,
    Chair of the Labor
    Council of LIHLA

AGREED:

1199 SEIU UNITED HEALTHCARE
WORKERS EAST

By:_____
    Pearl Granat

July ___, 2007

Ms. Pearl Granat
1199 SEIU United Healthcare Workers East
310 West 43rd Street
New York, New York 10036

Dear Ms. Granat:

This letter is delivered simultaneously with the execution of the MOA between the Association and the Union covering the period May 1, 2007 through April 30, 2011, and has the same force and effect as if set forth therein.

Paragraph 9C of the CBAs shall be amended to read as follows:

> Part-time employees (defined as employees who work less
> than a full work week and were not hired to work full time)
> shall be paid the regular minimum rate and shall receive
> pro-rated pay, sick leave, holidays, vacations, etc.,
> according to the hours they actually work.

The remainder of paragraph 9C shall be deleted as inconsistent with current practice, provided, however, that no employee who triggered into full-timer benefit status and received full-timer benefits pursuant to paragraph 9C as of the ratification of this MOA shall suffer a reduction in status or benefits as long as such employee continues to work five days per week.

Very truly yours,

LONG ISLAND HEALTHCARE
LABOR ASSOCIATION

By: _____
    Kenneth Winston,
    Chair of the Labor
    Council of LIHLA

AGREED:

1199 SEIU UNITED HEALTHCARE
WORKERS EAST

By: _____
    Pearl Granat

July __, 2007

Ms. Pearl Granat
1199 SEIU United Healthcare Workers East
310 West 43rd Street
New York, New York  10036

Dear Ms. Granat:

The holidays and premium holidays (as defined in the CBAs) under paragraph 9 of the MOA shall be as follows:

> New Year's Day*
> Martin Luther King Birthday*
> President's Day*
> Easter Sunday
> Memorial Day*
> Independence Day*
> Labor Day*
> Thanksgiving Day*
> Christmas Day*
> Employee's Birthday
> (2) Personal Days
> LPN Day (for incumbent LPNs)

*Denotes premium holiday.

Very truly yours,

LONG ISLAND HEALTHCARE
LABOR ASSOCIATION

By: _____
      Kenneth Winston.
      Chair of the Labor
      Council of LIHLA

AGREED:

1199 SEIU UNITED HEALTHCARE
WORKERS EAST

By: _____

MEMORANDUM OF AGREEMENT

Between

NEW YORK'S HEALTH AND HUMAN SERVICE UNION
1199/SEIU, AFL-CIO ("1199" OR "Union")

and

Long Island Healthcare Labor Association


This Memorandum of Agreement ("MOA") shall apply to the collective bargaining agreements currently in effect between the Union and the Association ("CBAs").

1.    Continuation of Existing Terms:   All of the terms and conditions of the CBAs shall remain in full force and effect except as expressly modified in this MOA (the "new agreements").

2.    Duration:   The term of the new agreements shall be from June 1, 2004 – April 30, 2008.

3.    General Wage Increases and Increases to Minimum Rates:

   A.   Wage Increases:

      1.   June 1, 2004 – 3%.

      2.   December 1, 2005 – 3%.

      3.   December 1, 2006 – 3%.

      4.   October 1, 2007 – 3%.

The above wage increases shall be compounded and added to the contractual minimum rates.


   B.   LPN Minimum:

The LPN minimum shall be adjusted to $20.24 per hour effective June 1, 2004.

4.  Funds Contributions and Benefits:

A.  Benefit Fund:

1. The parties recognize that the Employers in the long term care industry who applied for grants through the Greater New York Consortium shall contribute $15 million dollars to the Benefit Fund ("BF") from the proceeds received by Employers through the Supplemental Quality Care Grant and related monies in the following manner:

The aforesaid $15 million dollars will be contributed to the Benefit Fund within 10 days from the receipt of such amount by the Employers.

Each Employer receiving Quality Care Grant and/or related monies shall contribute its proportionate share of the aforesaid $15 million dollars by applying the same percentage as its grant represents to the overall grant dollars received (e.g., if the total amount of grant dollars received by Consortium members is $40 million dollars and the Employer receives $1 million dollars it shall contribute $1/40^{th}$ of the $15 million dollars.

2. Legal Services: The 1115 Prepaid Legal Services Fund ("LF") shall be merged into the BF effective as of January 1, 2005. Legal services benefits as developed by the BF trustees shall thereafter be available to participants in the BF eligible for such benefits. There shall be no additional Employer contributions to the BF to fund the legal services benefits. The $8 per month contribution made by Employers to the LF shall cease effective May 31, 2004.

3. A program of savings initiatives shall be implemented that produces savings of $22 million over the term of this MOA and achieves a "going out" annual savings rate of at least

$4 million by the end of the MOA.   (See side letter.)

4.  A cost Savings Committee ("Committee") consisting of Dennis Rivera and Mark Sussman, or their designees, shall be established.  The functions of the Committee shall include establishing a base line for measurement, setting benchmarks and milestones, measuring the results of and monitoring the effect of the savings initiatives.  The Committee shall also seek additional ways.. to improve the cost efficiency of the BF.

Effective May 1, 2005, and every twelve months thereafter, a consultant retained by the Committee shall determine if the anticipated savings are being achieved.  In the event of a shortfall Mark Sussman and Dennis Rivera, or their designees shall decide whether to direct a diversion from the PF to the BF to make up such shortfall.

5.  As part of cost savings, the parties recognize that the Union's Delegates will play a pivotal role in educating the Union membership in understanding the cost savings program, in helping to prevent fraud and abuse in the Funds, and in understanding the CBAs and the new agreements and the collective bargaining process.   In this regard, the Delegates will be released for up to five (5) days with pay over the term of this agreement for intensive training in these areas. The release of Delegates shall not unreasonably interfere with the operations of the Employers. The Employers will be reimbursed from the Worker Participation Fund for the cost of release time (approximately $1,000 per Delegate).

This provision shall replace the existing provision in the parties' collective bargaining agreements concerning delegate days.

6. It is the agreement of the Association, the Union and the Funds to implement, wherever possible, electronic transmission of dues remittances, Fund contributions and reports and to streamline reporting requirements. The Association, the Union and the Funds will meet to discuss the most practicable implementation program to achieve this objective.

B.    Pension Fund:

1.    Active employees who retire on or after January 1, 2005 shall receive a pension based on an accrual rate of $37 per month to a maximum pension of $925 per month ($37 x 25 years).

2.    Pension Fund Diversions:

The particulars of our agreement outlined below are as follows:

### June 1, 2004 - May 31, 2005:

The Employers shall make 3 months of contributions to the Pension Fund (March, April and May 2005).

3 months of Pension Fund contributions shall be diverted to the Benefit Fund (September and October 2004 and February 2005).

No contributions shall be required to be made to the Pension Fund for the months of (June, July, August, November and December 2004 and January 2005).

### June 1, 2005 - May 31, 2006:

The Employers shall make 10 months of contributions to the Pension Fund (August 2005 through May 2006).

2 months of Pension Fund contributions shall be diverted to the Benefit Fund (June and July 2005).

### June 1, 2006 - May 31, 2007:

The Employers shall make 10 months of contributions to the Pension Fund (August 2006 through May 2007).

2 months of Pension Fund contributions shall be diverted to the Benefit Fund (June and July 2006).

An additional 1 month of Pension Fund contributions (a 13th month) shall be contributed to the Pension Fund or diverted to the Benefit Fund as determined by the parties according to the economic needs of the Funds (October 2006).

### June 1, 2007 - May 31, 2008:

The Employers shall make 10 months of contributions to the Pension Fund (August 2007 through May 2008).

2 months of Pension Fund contributions shall be diverted to the Benefit Fund (June and July 2007).

An additional 1 month of Pension Fund contributions (a 13th month) shall be contributed to the Pension Fund or diverted to the Benefit Fund as determined by the parties according to the economic needs of the Funds (October 2007).

C.  Job Security Fund:

The diversion currently in effect from the 1199 Greater New York Job Security Fund ("JSF") to the 1199 Greater New York Worker Participation Fund ("WPF") shall continue through May 31, 2005. Effective June 1, 2005, Employers shall contribute to the JSF at the rate of one-quarter (.25%) percent of gross payroll.

D.   Worker Participation Fund:

Effective  June  1,  2006  Employers  shall  commence contributing to the WPF at the rate of one-quarter percent (".25%") of gross payroll.

5.  Job Security Date:  Employees employed by an Employer prior to January 1, 2000 shall be protected against layoff. Unprotected employees laid off are eligible for benefits from the JSF.

In the event an Employer raises a substantial issue over the number of its protected bargaining unit employees (e.g., more than 75% of the employees in a department or area are protected) the issue may be referred to a Committee made up of Dennis Rivera, and Mark Sussman, or their  designees,  but  shall  not  be  subject  to  its arbitration process.

6. Minimum Wages:  The parties shall continue to discuss the pending issues between them concerning the use of Supplemental Quality Care Grant monies or related monies from the State of New York to achieve adjustments, where appropriate,  to  the  minimum  wages  in  certain classifications. In furtherance of these discussions, the Employers will provide the Union within five (5) days hereof with current payroll runs covering all bargaining unit employees in all classifications.  Within ten (10) days thereafter the parties shall meet to determine appropriate adjustments if any.  Within ten (10) days after receipt by each Employer of Grant monies or related monies, any agreed upon wage adjustments shall be made by each Employer from said Grant monies and/or related monies. In the event the parties cannot agree within sixty (60) days of receipt of such monies, the matter shall be submitted  to  the  Impartial  Chairman  for  a  final adjudication by him, such adjudication to be completed within sixty (60) days.

To the extent an Employer does not receive any Grant or related monies, the Union commits itself to assist such Employer in obtaining alternative funds through the State of New York.

7. Contract Administrators:   The Association and the Union shall implement an employee release time program to provide for Labor Relations and benefits administration. This Program shall be effective for the period January 1, 2005 – April 30, 2008. The release of Contract Administrators shall not unreasonably interfere with the operations of the Employer. The cost of the Contract Administrators Program shall be paid through the WPF.

8.Employment Service: Each Employer shall notify the 1199 Employment Service of all vacancies not filled from within its facility. The Employment Service shall have three (3) working days to refer qualified applicants to the Employer before the Employer may hire from other sources. The Employer retains the right to hire or decline to hire any applicant referred by the Employment Service in its sole discretion.

9.Technical and Professional Employees: The parties shall discuss the appropriate rates and unit placement of employees in technical and professional classifications in the long term care industry. In the event that these discussions do not result in agreement by March 1, 2005, the rates, classifications, and unit placement of such employees shall be submitted to the Impartial Chairman for binding interest arbitration.

10.Impartial Chairman:   The parties reappoint Martin F. Scheinman for a new five (5) year term as Impartial Chairman, subject to the provisions of Article 9.B of the CBAs.

11.Quality Care Committee:   The Union and the "Association" shall discuss the establishment of a Quality Care Committee to study and review nursing care practices, including job assignments and duties of bargaining unit members.   The Q.C.C. shall lead to recommendations to the "Association" and 1199 Nursing Home Division leadership with reference to nursing care practices, with the goal of providing appropriate care for each resident in accordance with the New York standards.

12.New Employees:
The following provisions shall apply only during the period June 1, 2004 through December 31, 2007, at which point they

will cease to be part of the parties' collective bargaining agreement.

During this period, and only after the ratification of this agreement, the Employers shall be permitted to hire up to five (5) FTEs in the Service Unit who will be paid the contractual minimum but who will not receive fringe benefits, including health coverage and coverage under the contractual Funds.

The foregoing shall be subject to the following conditions: 1) no bargaining unit employee shall be laid off as a result of such hiring; 2) the seniority, posting and probationary provisions of the collective bargaining agreement shall not ·be altered as a result of the foregoing.

No employee may be hired beyond the five (5) FTE limitation unless, in order of seniority, the employees theretofore hired under this provision are moved into benefit status.

13. <u>Terms and Conditions</u>:  The provisions of paragraph 1 (Terms and Conditions) of the parties March 25, 2002 Memorandum of Agreement shall be deemed satisfied.

14.<u>Disputes</u>:   Any dispute as to the interpretation or application of this MOA shall be submitted to arbitration before the Impartial Chairman.

    This Agreement is subject to ratification by the Union and the Association.

NEW YORK'S HEALTH &
HUMAN SERVICE UNION,
1199/SEIU, AFL-CIO

Long Island Healthcare
Labor Association

Pearl Granat,
Vice President            Joanne McCarthy VP

Kenneth Winston,
Chair of the Labor
Council of LIHLA

Emily J. Closs

Kathleen Quickly                   Margaret Stewart

Benjamin Michelson                 Shirley Johnson

Nancy Melello                      Wilfrid Jean

Susan Meehie                       Stefen Griffin

                                   Sharon Blount

Brenda Adams                       Judy Sadell

Geraldo Cossery                    Marguerite Grasse

Yvonne Ferrester                   Bessie Simpson

Valerie Wilkinson                  Bonnie

Keith T. Spencer-Avent             Myrtle Dean

Shelton Bulloch                    Kenna Bean

Dorothy White                      Renee Bodley

Carroll Simmons                    Melwood Campbell

William Patten

Velma Breland

Enez Eli

Donna Bryan

Ethel McArthur

Violett Dell

Diane Yoins

Kenth Hurd

Ena R. Robinson

- 9 -

## SCHEDULE A

### Long Island Healthcare Labor Association

1.  Carillon Nursing Home

2.  Cedar Lodge

3.  Central Island

4.  Daleview Care Center

5.  Glen Garriff

6.  Ocean Promenade

7.  Parkview

8.  Port Jefferson

9.  Riverhead Nursing Home

10. Rockville Nursing Home

11. St. James Plaza

12. St. James Nursing Home

13. South Shore

14. Sun Harbor

June 9, 2004


Ms. Pearl Granat
1199 SEIU
310 West 43rd Street
New York, NY 10036


Dear Ms. Granat:

This letter is delivered simultaneously with the execution of the MOA between the Association and the Union covering the period June 1, 2004-April 30, 2008, and has the same force and effect as if set forth therein.

With respect to the Reimbursement Clause (Article 38) of the CBAs, it is understood as follows:

1. There shall be no Association-wide claim of inadequate reimbursement.

2. Prior to any Employer exercising any rights it may have under Article 38 in the case of inadequate reimbursement, it must first submit its claim of inadequate reimbursement to the Labor Management Reimbursement Review Committee comprised of Union members Dennis Rivera, Jay Sackman, Dan Ratner, Irwin Bluestein, and Employers members John Chobor, Mark Sussman, Morris Tuchman, Eric Simon and Impartial Chairman Martin Scheinman. A quorum of two Union members and two Employer members of the Committee and the Impartial Chairman shall be required for the conduct of the Committee's business. No Employer may implement any lesser term or condition of employment, nor may any Employer's claim be submitted for adjudication by the Impartial Chairman, without having first been submitted to the committee.

3. The Committee shall have full access to cost reports, rate sheets, and other documents, books and records as it may require to evaluate the Employer's claim of inadequate reimbursement.

4. The fourth Whereas provision in the CBAs is deleted as it is no longer relevant.

Very truly yours,

Long Island Healthcare Labor Association

By: _____
Kenneth Winston
Chair of the Labor Council of LIHLA

AGREED:

NEW YORK'S HEALTH & HUMAN
SERVICE UNION, 1199/SEIU,
AFL-CIO

By: _____
Pearl Granat
Vice President

June 9, 2004

Ms. Pearl Granat
1199 SEIU
310 West 43rd Street
New York, NY 10036

Dear Ms. Granat:

This letter is delivered simultaneously with the execution of the MOA between the Association and the Union covering the period June 1, 2004 through April 30, 2008, and has the same force and effect as if set forth therein.

BF Cost Savings Initiatives

This sets forth a list of cost savings initiatives identified during the course of negotiations that, if aggressively and effectively implemented should achieve the cost savings commitments in the MOA of $22 million over the life of the MOA and an annual and recurring savings rate of at least $4.4 million by the end of the MOA. Moreover, the Union and the Association have agreed that the Trustees and the Executive Director of the BF shall aggressively seek additional ways to reduce the cost of providing benefits while maintaining the integrity of the benefits received by the Union Members.

As it is the intention of the parties to maintain and improve the BF's programs, these and other adjustments are needed to preserve the resources of the BF to provide its comprehensive health coverage in the face of rising health care costs. Thus, without limiting the potential cost savings approaches the Trustees and Executive Director of the BF should pursue, they are directed to implement the following programs, policies and plan changes.

A Cost Savings Committee ("Committee") consisting of Dennis Rivera and Mark Sussman, or their designees, shall be established. The functions of the Committee include establishing a base line for measurement, setting benchmarks and milestones, measuring the results of and monitoring the effect of the savings program referred to above. The Committee shall also seek additional ways to improve the cost efficiency of the Benefit Fund.

1.    Mandatory Mail Order for Maintenance Prescription Drugs

This Program requires active and retired members who use
certain prescription drugs on a regular and long term basis
to have those prescriptions filled, by mail, through the BF
pharmacy benefit manager.  This program will relieve some
members of the need to constantly reorder the drug and to
travel unnecessarily.  It will help the BF save resources
by purchasing in bulk.

2.    Mandatory Medicare risk HMO

A mandatory Medicare risk HMO for those in the greater New
York coverage area.    The program will provide full
hospital, medical, drug, eyeglasses and a limited dental
benefit.    The BF shall implement the program as soon as
practicable and shall enroll members as soon as the new HMO
benefit provider is available. All eligible retirees shall
enroll no later than January 1, 2005, except for hardship
exemptions.

The BF shall immediately investigate the availability of a
similar program for retirees living in Florida.

3.    Medical Management of Patient Care Services

As recommended by the actuarial consultants to the BF, in order
to  improve  the  quality  and  efficiency  of  the  radiology,
laboratory, and medical management of patient care services, the
BF Trustees shall (a) promptly contract with a vendor network as
the  sole  provider  to  BF  participants  and  beneficiaries  of
radiology  services  and  a  similar  provider  for  laboratory
services  and  (b)  implement  a  program  of  improved  medical
management  of  patient  care  services.    The  radiology  and
laboratory vendor network provider agreements shall be effective
no  later  than  October  1,  2004  and  the  improved  medical
management program shall be implemented as soon as practicable.

4.    Pharmacy Benefits Manager

The BF shall rebid the contract for a pharmacy benefits manager
in order to achieve the most favorable terms available in the
marketplace.

5.    Coordination of Benefits

- 2 -

The BF shall redouble its efforts to strongly and
vigorously enforce its coordination of benefits policy to
ensure that all alternative sources of coverage are applied
to offset and reduce the cost of providing benefits.

6.    Full Formulary program

The mandatory full formulary program, which is administered
through the BF, by its pharmacy benefit manager shall,
effective January 1, 2005, not cover proton pump inhibitors
(e.g., Nexium), except where there is a diagnosis of
disease that requires such prescription drugs for effective
treatment.    For other conditions, members have available
effective over the counter medications (e.g., Prilosec
OTC).

Medical Reimbursement Schedule

At the request of the Executive Director of the BF, Dennis
Rivera and Mark Sussman, or their designees, shall meet to
consider the necessity and viability of improving the medical
reimbursement schedule.    The factors that they shall consider
may include, but are not limited to, the need for such
increases, the excess of projected savings over the target set
forth at Paragraph 4 of the MOA (if any), and the availability
of Pension Fund diversion dollars.    If they do not reach
agreement, the matter shall not be arbitrable, however, the
medical reimbursement schedule shall be increased by the value
of projected savings in excess of the target set forth at
Paragraph 4 of the MOA, if any.

Very truly yours,

Kenneth Winston
Chair of the Labor Council of LIHLA

AGREED:

1199/SEIU, New York's Health
& Human Service Union

Pearl Grant
Vice President

- 3 -

June 9, 2004


Ms. Pearl Granat
1199 SEIU
310 West 43rd Street
New York, NY 10036


Dear Ms. Granat:

This letter is delivered simultaneously with the execution of the MOA between the Association and the Union covering the period June 1, 2004 through April 30, 2008, and has the same force and effect as if set forth therein

The 9.65% employment credit applicable to the BF, JSF, WPF, Education Fund, and Childcare Fund, as determined by the Impartial Chairman, shall continue through the term of this agreement, except that for the period June 1, 2004 through May 31, 2005 the employment credit shall be fixed at 10.65%.

Very truly yours,

Long Island Healthcare Labor Association


By: _Kenneth Winston_
Kenneth Winston
Chair of the Labor Council of LIHLA

AGREED:



NEW YORK'S HEALTH & HUMAN
SERVICE UNION, 1199/SEIU,
AFL-CIO

By: _Pearl Granat_
Pearl Granat
Vice President

```
AWARD OF THE IMPARTIAL CHAIRMAN
------------------------------------X
In the Matter of the Arbitration
                                    X
          between
                                    X
PARKVIEW CARE AND REHABILITATION CENTER
                                    X    Delinquencies
               "Home"                    November 1, 2006 -
                                    X    August 31, 2007
          -and-
                                    X
1199SEIU UNITED HEALTHCARE
WORKERS EAST                        X

               "Union"              X

------------------------------------X
```

**APPEARANCES**

### For the Home

JACKSON LEWIS, L.L.P.
   Christopher M. Valentino, Esq.

### For the Union

MEYER, SUOZZI, ENGLISH & KLEIN, P.C.
   Linda E. Rodd, Esq.

**BEFORE:**  Martin F. Scheinman, Esq., Impartial Chairman

**BACKGROUND**

The undersigned is designated as the Impartial Chairman in the Collective Bargaining Agreement ("Agreement") between 1199SEIU United Healthcare Workers East ("Union") and Parkview Care and Rehabilitation Center ("Home"). The Union submitted a dispute to me alleging the Home had violated the Agreement by failing and or refusing to make proper and timely contributions to the 1199/SEIU Greater New York Benefit Fund ("Benefit Fund"), 1199/SEIU Greater New York Pension Fund ("Pension Fund"), 1199/SEIU Greater New York Education Fund ("Education Fund"), 1199/SEIU Greater New York Child Care Fund ("Child Care Fund"), 1199/SEIU Greater New York Job Security Fund ("Job Security Fund"), and the 1199/SEIU Worker Participation Fund ("Worker Participation Fund") ("Funds"), for the period November 1, 2006, through August 31, 2007.

Multiple hearings have been held at which time both parties were afforded full opportunities to introduce evidence and arguments in support of their respective positions. They did so. Upon completion of the parties' submissions, the hearing and record were declared closed.

2

## OPINION

During the pendency of this arbitration proceeding and in order to avoid a termination of benefits, the Home entered into a payout agreement and confession of judgment with the Funds for contributions due for the period September 1, 2006, through December 31, 2006. When the Home defaulted in making installment payments and current monthly contributions as required by the payout agreement, the Funds notified the Home it was in Default and the Funds had the right to enter judgment on the confession of judgment and lien the Home's revenue and assets.    The Home then submitted an application for relief from its Funds obligations in this delinquency arbitration, claiming that an effort by the Funds to lien the Home's revenue and or assets would severely impair the Home's ability to continue operations and pay its debt to the Funds.

During the hearings conducted in this matter, the Home explained it was seeking economic relief because of financial difficulties it is experiencing since the inception of the Collective Bargaining Agreement between the Union and the Long Island Healthcare Facilities Association ("LIHLA") in 2002, to which it is bound.    The Home claims it has suffered a shortfall of approximately eleven (11%) percent between the State of New York Department of Health's trend factor and actual labor costs, as well as a shortfall in its reimbursement of approximately $2

3

million in each of the last three (3) years, 2004, 2005 and 2006. The Home submitted into evidence extensive financial analyses demonstrating its financial distress, including its accountant's calculations showing the shortfall between labor costs and its reimbursement rate since 2006 has been $44.56 per bed, per day.

One of the measures the co-owners of the Home, David and Judi Jones, took to alleviate the Home's financial distress was to apply to the New York State Department of Health for approval to transfer the facility, which would result in a higher reimbursement rate as of the date of the transfer. Accountants for the Home anticipate the State will approve the transfer around March or April 2008, resulting in the Home realizing increased reimbursement approximately three (3) months, thereafter. Representatives of the Home testified, once the transfer is accomplished, the Home believes it will realize sufficient additional revenue over the next two (2) years to be able to pay its debt to the Funds.

The maximum payout period the Trustees of the Funds will grant pursuant to the Funds Delinquency Policy, however, is three (3) months and, therefore, the Home is requesting relief in the form of an extended two (2) year payout arrangement.

Based upon the foregoing, I have determined the Home will have sufficient revenue over the course of the next two (2)

years to pay its obligations to the Funds once it begins to receive expected increases in its revenue from the State of New York. I am, therefore, not granting any relief in the amount of the Home's obligation to the Funds, but have determined it is in the best interests of the Funds' ability to collect, and the employees of the Home, to permit the Home to pay its debt to the Funds over such two (2) year period. However, because there is not at this time complete certainty the State will approve the transfer or approve it in a timely fashion and because of the consequent risk the Home may not in fact realize the increase in revenue necessary to pay the debt to the Funds, I have determined the extraordinary relief requested by the Home is warranted only if the co-owners guarantee payment of the debt. Accordingly, I direct as follows:

### AWARD

1. **The Debt**: The Home's liability to the Funds for contributions and interest due under the Agreements for payroll periods November 1, 2006, through August 31, 2007, including interest accrued through October 8, 2007, is $861,632.53 ("Debt").

2. **Current Monthly Contributions**: The Home shall remain current in its regular monthly contributions to the Funds ("Current Contributions") in accordance with the parties'

Agreement.  The Home shall not object to the Funds crediting all monies paid in accordance with paragraph 3 of this Award to any unpaid Current Monthly Contributions as they become due.

3.  **Installment Payments**:  The Home shall pay the Debt to the Funds by making monthly installment payments ("Installment Payments") as set forth on the attached Payout Schedule.

4.  **COJ's**:  Immediately upon receipt of this Award, the following Confessions of Judgment (copies of which are attached) shall be executed for the full amount of the Debt:

> a)  a Confession of Judgment by the Home (the "Home's COJ"); and
>
> b)  Confessions of Judgment by each of the Co-owners, David and Judi Jones (the "Co-owners"), in which they shall assume joint and several liability, as between themselves individually and as between themselves individually and the Home (the "Co-owners' COJ's").

If all such Confessions of Judgment are not executed within five (5) days after the date of this Award, this Award may be confirmed and enforced in any court of competent jurisdiction for the full amount of the Debt.

6.  **Default; Entry of Judgment on COJ's**:

a)  In the event of the Home's failure to

6

        i)     make     any     Installment     Payments     or     Current
            Contributions as required hereunder, or

        ii)    comply with the "Sale or Transfer" provision in
            paragraph 10 below

and upon the expiration of (10) days after written notice of
said failure has been sent to the Home without the Home having
made the required payments (subject to any different notice
period provided in paragraph 10), the Home shall be in default
("Default") of its obligations under this Award, with the result
the entire unpaid balance of the Debt shall become due and
payable at once and the Funds shall have the right to enter and
enforce the Home's COJ, without further notice to the Home, to
the extent of the unpaid balance of the Debt and or Current
Contributions, plus additional interest since October 8, 2007,
at the rate of twelve percent (12%) per annum and attorneys'
fees and liquidated damages as set forth below. The Funds shall
also have the right to pursue any other remedies at law, in
equity, under contract or otherwise.

      b)    In the event the Funds are unable to collect payment of
the Debt through enforcement of the Home's COJ, the Funds shall
have the right, after five (5) days notice to the Co-owners, to
enter and enforce either and or both of the Co-owners' COJ's to
the extent of the unpaid balance of the Debt and or Current
Contributions, plus additional interest since October 8, 2007,

at the rate of twelve (12%) percent per annum and attorneys' fees and liquidated damages as set forth below. The Funds shall also have the right to pursue any other remedies at law, in equity, under contract, or otherwise.

7. **Attorneys' Fees**: In the event the Home is in Default as set forth above, the Home shall be liable to the Funds in the additional sum of eight (8%) percent of the Debt in order to compensate the Funds for the attorneys' fees that will be incurred as a result of such Default.

7. **Waiver of Defenses, Liquidated Damages**: The Home and the Co-owners shall not oppose entry or enforcement of judgment on the Home's COJ or the Co-owners' COJ's, or the obtaining of a judgment or execution upon any such judgment on such COJ's, including without limitation any defenses based upon a) the statute of limitations or the timeliness of any such proceedings; and or b) the Funds' conduct in accepting late or otherwise improper payment of Installment Payments or Current Contributions. If the Home or the Co-owners oppose entry or enforcement of judgment upon any COJ, the Home and or the Co-owners shall pay the Funds liquidated damages in the amount of twenty percent (20%) of the Debt as set forth, herein, in addition to the payment of the Debt, interest and attorneys fees.

9.   **Audit:**   Notwithstanding   anything   to   the   contrary contained, herein, the Home's payroll records shall be subject to audit for any unaudited period covered by this Award, or any other unaudited period, pursuant to the provisions of the Agreements between the Home and the Union and pursuant to the Agreements and Declarations of Trust establishing the Funds. If said audit reveals additional contributions are due to the Funds, the amount due for the period shall be paid by the Home. If said audit reveals the Home has overpaid the Funds, the Home may seek a credit from the Funds in such amount.

10.  **Sale or Transfer:** Upon the Home's entering into a receivership agreement or an agreement for the sale, lease or transfer of the operation, management and or assets ("Transfer") of the Home to a receiver, managing agent, purchaser(s), lessee(s),   transferee(s),   or   successor(s)   ("Successor"), including without limitation the proposed sale to the children of the Co-Owners, the Home shall insure such agreement will contain one of the following provisions: a) the remaining Debt plus interest at the rate of twelve (12%) percent per annum since October 8, 2007, shall be paid by the Home before, or out of the proceeds of, the Transfer; or b) the Successor shall assume the obligations under this Award. In the event of the latter, the Funds shall have the right to request information about the Successor and determine whether the proposed Successor

is economically viable to assume the obligations under this Award. The determination of whether the Successor is economically viable shall be solely and exclusively within the discretion of the Funds. If the Funds determine the Successor is not economically viable, the Funds shall have the right to demand that the unpaid balance of the Debt plus interest shall be paid by the Home before, or out of the proceeds of, the Transfer. At least sixty (60) days before any such transaction involving a potential Successor, the Home shall give the Funds and the Union notice of the proposed transaction and demonstrate it has complied with the requirements in this paragraph and its other obligations under this Award. In the event the Home fails to comply with any provision of this paragraph, the entire unpaid balance of the Debt shall become due and payable at once and the Default provisions, herein, shall be applicable, provided however the ten (10) day cure period contemplated by the Default provisions, herein, shall be inapplicable. The Home may have up to ten (10) days from the date of the Funds' notice to the Home to cure the Default, but in no event shall the period to cure extend beyond thirty (30) days before the date of the proposed Transfer. The Funds may enter judgment on the Home's and or the Co-owners' COJ's at any time within thirty (30) days of the proposed Transfer without regard to whether ten

10

(10) days has elapsed from the date of the Funds' Default notice to the Home.

11. The Funds shall not be deemed by any act, delay or omission, including without limitation the acceptance of Installment Payments or Current Contributions are late or are not in the proper amount, to have waived any right or remedy which the Funds may have regarding the collection of the Debt and no course of dealing among the Funds, the Union and or the Employer may serve to change or modify the Home's obligations directed in this Award.

12. The Home shall have the right, during the term of the Payment Schedule, to prepay without penalty any and all Monthly Installments with interest at the rate set forth, herein, up to the date of payment.

This Award may be confirmed and enforced in any court of competent jurisdiction and shall be binding upon the parties hereto, their heirs, executors, administrators, successors and assigns.

December 13, 2007.

_____
Martin F. Scheinman, Esq.
Impartial Chairman

11

STATE OF NEW YORK )
                  ) ss.:
COUNTY OF NASSAU  )

I, MARTIN F. SCHEINMAN, Esq. do hereby affirm upon my oath

as Impartial Chairman that I am the individual described herein

and who executed this instrument, which is my Award.

December /3 , 2007.

_____
Martin F. Scheinman, Esq.
Impartial Chairman

PARKVIEW.1199.DEL.AWD

12

Parkview Nursing Home #41034

**PAYOUT SCHEDULE**
FOR THE PERIOD
November 01, 2006 - August 31, 2007

| | *TOTAL WELFARE DUE* | $609,688.33 |
|---|---|---|

| DUE DATE | Payment Number | WELFARE | PRINCIPAL BALANCE | PAYOUT INTEREST | TOTAL PAYMENT | CURRENT MONTH TO BE PAID |
|---|---|---|---|---|---|---|
| | | | $ 609,688.33 | | | |
| ######## | Payment #1 | $10,695.00 | $598,993.33 | $ 6,096.88 | $605,090.21 | Sep-07 |
| ######## | Payment #2 | $10,695.00 | $588,298.33 | $5,989.93 | $594,288.26 | Oct-07 |
| ######## | Payment #3 | $10,695.00 | $577,603.33 | $5,882.98 | $583,486.31 | Nov-07 |
| 1/10/2008 | Payment #4 | $10,695.00 | $566,908.33 | $5,776.03 | $572,684.36 | Dec-07 |
| 2/10/2008 | Payment #5 | $10,695.00 | $556,213.33 | $5,669.08 | $561,882.41 | Jan-08 |
| 3/10/2008 | Payment #6 | $10,695.00 | $545,518.33 | $5,562.13 | $551,080.46 | Feb-08 |
| 4/10/2008 | Payment #7 | $10,695.00 | $534,823.33 | $5,455.18 | $540,278.51 | Mar-08 |
| 5/10/2008 | Payment #8 | $10,695.00 | $524,128.33 | $5,348.23 | $529,476.56 | Apr-08 |
| 6/10/2008 | Payment #9 | $10,695.00 | $513,433.33 | $5,241.28 | $518,674.61 | May-08 |
| 7/10/2008 | Payment #10 | $10,695.00 | $502,738.33 | $5,134.33 | $507,872.66 | Jun-08 |
| 7/10/2008 | Balloon Payment | $189,018.33 | $313,720.00 | $5,027.38 | $318,747.38 | |
| 8/10/2008 | Payment #11 | $10,695.00 | $303,025.00 | $3,137.20 | $306,162.20 | Jul-08 |
| 9/10/2008 | Payment #12 | $10,695.00 | $292,330.00 | $3,030.25 | $295,360.25 | Aug-08 |
| ######## | Payment #13 | $21,390.00 | $270,940.00 | $2,923.30 | $273,863.30 | Sep-08 |
| ######## | Payment #14 | $21,390.00 | $249,550.00 | $2,709.40 | $252,259.40 | Oct-08 |
| ######## | Payment #15 | $21,390.00 | $228,160.00 | $2,495.50 | $230,655.50 | Nov-08 |
| 1/10/2009 | Payment #16 | $21,390.00 | $206,770.00 | $2,281.60 | $209,051.60 | Dec-08 |
| 2/10/2009 | Payment #17 | $21,390.00 | $185,380.00 | $2,067.70 | $187,447.70 | Jan-09 |
| 3/10/2009 | Payment #18 | $21,390.00 | $163,990.00 | $1,853.80 | $165,843.80 | Feb-09 |
| 4/10/2009 | Payment #19 | $21,390.00 | $142,600.00 | $1,639.90 | $144,239.90 | Mar-09 |
| 5/10/2009 | Payment #20 | $21,390.00 | $121,210.00 | $1,426.00 | $122,636.00 | Apr-09 |
| 6/10/2009 | Payment #21 | $21,390.00 | $99,820.00 | $1,212.10 | $101,032.10 | May-09 |
| 7/10/2009 | Payment #22 | $21,390.00 | $78,430.00 | $998.20 | $79,428.20 | Jun-09 |
| 8/10/2009 | Payment #23 | $21,390.00 | $57,040.00 | $784.30 | $57,824.30 | Jul-09 |
| 9/10/2009 | Payment #24 | $57,040.00 | $0.00 | $570.40 | $570.40 | Aug-09 |
| | **TOTALS** | $609,688.33 | $8,221,623.30 | $88,313.12 | $8,309,936.42 | |

| | *TOTAL PENSION DUE* | $175,209.30 |
|---|---|---|

| DUE DATE | | PENSION | PRINCIPAL BALANCE | PAYOUT INTEREST | TOTAL PAYMENT | CURRENT MONTH TO BE PAID |
|---|---|---|---|---|---|---|
| | | | $ 175,209.30 | | | |
| ######## | payment #1 | $3,405.00 | $171,804.30 | $1,752.09 | $173,556.39 | Sep-07 |
| ######## | Payment #2 | $3,405.00 | $168,399.30 | $1,718.04 | $170,117.34 | Oct-07 |
| ######## | Payment #3 | $3,405.00 | $164,994.30 | $1,683.99 | $166,678.29 | Nov-07 |
| 1/10/2008 | Payment #4 | $3,405.00 | $161,589.30 | $1,649.94 | $163,239.24 | Dec-07 |
| 2/10/2008 | Payment #5 | $3,405.00 | $158,184.30 | $1,615.89 | $159,800.19 | Jan-08 |
| 3/10/2008 | Payment #6 | $3,405.00 | $154,779.30 | $1,581.84 | $156,361.14 | Feb-08 |
| 4/10/2008 | Payment #7 | $3,405.00 | $151,374.30 | $1,547.79 | $152,922.09 | Mar-08 |
| 5/10/2008 | Payment #8 | $3,405.00 | $147,969.30 | $1,513.74 | $149,483.04 | Apr-08 |
| 6/10/2008 | Payment #9 | $3,405.00 | $144,564.30 | $1,479.69 | $146,043.99 | May-08 |
| 7/10/2008 | Payment #10 | $3,405.00 | $141,159.30 | $1,445.64 | $142,604.94 | Jun-08 |
| 7/10/2008 | Balloon Payment | $41,279.30 | $99,880.00 | $1,411.59 | $101,291.59 | |
| 8/10/2008 | Payment #11 | $3,405.00 | $96,475.00 | $998.80 | $97,473.80 | Jul-08 |
| 9/10/2008 | Payment #12 | $3,405.00 | $93,070.00 | $964.75 | $94,034.75 | Aug-08 |
| ######## | Payment #13 | $6,810.00 | $86,260.00 | $930.70 | $87,190.70 | Sep-08 |
| ######## | Payment #14 | $6,810.00 | $79,450.00 | $862.60 | $80,312.60 | Oct-08 |
| ######## | Payment #15 | $6,810.00 | $72,640.00 | $794.50 | $73,434.50 | Nov-08 |
| 1/10/2009 | Payment #16 | $6,810.00 | $65,830.00 | $726.40 | $66,556.40 | Dec-08 |
| 2/10/2009 | Payment #17 | $6,810.00 | $59,020.00 | $658.30 | $59,678.30 | Jan-09 |
| 3/10/2009 | Payment #18 | $6,810.00 | $52,210.00 | $590.20 | $52,800.20 | Feb-09 |
| 4/10/2009 | Payment #19 | $6,810.00 | $45,400.00 | $522.10 | $45,922.10 | Mar-09 |
| 5/10/2009 | Payment #20 | $6,810.00 | $38,590.00 | $454.00 | $39,044.00 | Apr-09 |
| 6/10/2009 | Payment #21 | $6,810.00 | $31,780.00 | $385.90 | $32,165.90 | May-09 |
| 7/10/2009 | Payment #22 | $6,810.00 | $24,970.00 | $317.80 | $25,287.80 | Jun-09 |
| 8/10/2009 | Payment #23 | $6,810.00 | $18,160.00 | $249.70 | $18,409.70 | Jul-09 |
| 9/10/2009 | Payment #24 | $18,160.00 | $0.00 | $181.60 | $181.60 | Aug-09 |
| | **TOTALS** | $175,209.30 | $2,428,553.00 | $26,037.62 | $2,454,590.62 | |

Parkview Nursing Home #41034

**PAYOUT SCHEDULE**
FOR THE PERIOD
November 01, 2006 - August 31, 2007

| *TOTAL EDUCATION DUE* | $15,453.30 |
|---|---|

| DUE DATE | | | EDUCATION | PRINCIPAL BALANCE | PAYOUT INTEREST | TOTAL PAYMENT | CURRENT MONTH TO BE PAID |
|---|---|---|---|---|---|---|---|
| | | | | $   15,453.30 | | | |
| ####### | payment #1 | | $300.00 | $15,153.30 | $   154.53 | $15,307.83 | Sep-07 |
| ####### | Payment #2 | | $300.00 | $14,853.30 | $151.53 | $15,004.83 | Oct-07 |
| ####### | Payment #3 | | $300.00 | $14,553.30 | $148.53 | $14,701.83 | Nov-07 |
| 1/10/2008 | Payment #4 | | $300.00 | $14,253.30 | $145.53 | $14,398.83 | Dec-07 |
| 2/10/2008 | Payment #5 | | $300.00 | $13,953.30 | $142.53 | $14,095.83 | Jan-08 |
| 3/10/2008 | Payment #6 | | $300.00 | $13,653.30 | $139.53 | $13,792.83 | Feb-08 |
| 4/10/2008 | Payment #7 | | $300.00 | $13,353.30 | $136.53 | $13,489.83 | Mar-08 |
| 5/10/2008 | Payment #8 | | $300.00 | $13,053.30 | $133.53 | $13,186.83 | Apr-08 |
| 6/10/2008 | Payment #9 | | $300.00 | $12,753.30 | $130.53 | $12,883.83 | May-08 |
| 7/10/2008 | Payment #10 | | $300.00 | $12,453.30 | $127.53 | $12,580.83 | Jun-08 |
| 7/10/2008 | **Balloon Payment** | | $3,653.30 | $8,800.00 | $124.53 | $8,924.53 | |
| 8/10/2008 | Payment #11 | | $300.00 | $8,500.00 | $88.00 | $8,588.00 | Jul-08 |
| 9/10/2008 | Payment #12 | | $300.00 | $8,200.00 | $85.00 | $8,285.00 | Aug-08 |
| ####### | Payment #13 | | $600.00 | $7,600.00 | $82.00 | $7,682.00 | Sep-08 |
| ####### | Payment #14 | | $600.00 | $7,000.00 | $76.00 | $7,076.00 | Oct-08 |
| ####### | Payment #15 | | $600.00 | $6,400.00 | $70.00 | $6,470.00 | Nov-08 |
| 1/10/2009 | Payment #16 | | $600.00 | $5,800.00 | $64.00 | $5,864.00 | Dec-08 |
| 2/10/2009 | Payment #17 | | $600.00 | $5,200.00 | $58.00 | $5,258.00 | Jan-09 |
| 3/10/2009 | Payment #18 | | $600.00 | $4,600.00 | $52.00 | $4,652.00 | Feb-09 |
| 4/10/2009 | Payment #19 | | $600.00 | $4,000.00 | $46.00 | $4,046.00 | Mar-09 |
| 5/10/2009 | Payment #20 | | $600.00 | $3,400.00 | $40.00 | $3,440.00 | Apr-09 |
| 6/10/2009 | Payment #21 | | $600.00 | $2,800.00 | $34.00 | $2,834.00 | May-09 |
| 7/10/2009 | Payment #22 | | $600.00 | $2,200.00 | $28.00 | $2,228.00 | Jun-09 |
| 8/10/2009 | Payment #23 | | $600.00 | $1,600.00 | $22.00 | $1,622.00 | Jul-09 |
| 9/10/2009 | Payment #24 | | $1,600.00 | $0.00 | $16.00 | $16.00 | Aug-09 |
| | **TOTALS** | | $15,453.30 | $214,133.00 | $2,295.86 | $216,428.86 | |

| *TOTAL CHILD CARE DUE* | $14,701.38 |
|---|---|

| DUE DATE | | | CHILD CARE | PRINCIPAL BALANCE | PAYOUT INTEREST | TOTAL PAYMENT | CURRENT MONTH TO BE PAID |
|---|---|---|---|---|---|---|---|
| | | | | $   14,701.38 | | | |
| ####### | payment #1 | | $300.00 | $14,401.38 | $   147.01 | $14,548.39 | Sep-07 |
| ####### | Payment #2 | | $300.00 | $14,101.38 | $144.01 | $14,245.39 | Oct-07 |
| ####### | Payment #3 | | $300.00 | $13,801.38 | $141.01 | $13,942.39 | Nov-07 |
| 1/10/2008 | Payment #4 | | $300.00 | $13,501.38 | $138.01 | $13,639.39 | Dec-07 |
| 2/10/2008 | Payment #5 | | $300.00 | $13,201.38 | $135.01 | $13,336.39 | Jan-08 |
| 3/10/2008 | Payment #6 | | $300.00 | $12,901.38 | $132.01 | $13,033.39 | Feb-08 |
| 4/10/2008 | Payment #7 | | $300.00 | $12,601.38 | $129.01 | $12,730.39 | Mar-08 |
| 5/10/2008 | Payment #8 | | $300.00 | $12,301.38 | $126.01 | $12,427.39 | Apr-08 |
| 6/10/2008 | Payment #9 | | $300.00 | $12,001.38 | $123.01 | $12,124.39 | May-08 |
| 7/10/2008 | Payment #10 | | $300.00 | $11,701.38 | $120.01 | $11,821.39 | Jun-08 |
| 7/10/2008 | **Balloon Payment** | | $2,901.38 | $8,800.00 | $117.01 | $8,917.01 | |
| 8/10/2008 | Payment #11 | | $300.00 | $8,500.00 | $88.00 | $8,588.00 | Jul-08 |
| 9/10/2008 | Payment #12 | | $300.00 | $8,200.00 | $85.00 | $8,285.00 | Aug-08 |
| ####### | Payment #13 | | $600.00 | $7,600.00 | $82.00 | $7,682.00 | Sep-08 |
| ####### | Payment #14 | | $600.00 | $7,000.00 | $76.00 | $7,076.00 | Oct-08 |
| ####### | Payment #15 | | $600.00 | $6,400.00 | $70.00 | $6,470.00 | Nov-08 |
| 1/10/2009 | Payment #16 | | $600.00 | $5,800.00 | $64.00 | $5,864.00 | Dec-08 |
| 2/10/2009 | Payment #17 | | $600.00 | $5,200.00 | $58.00 | $5,258.00 | Jan-09 |
| 3/10/2009 | Payment #18 | | $600.00 | $4,600.00 | $52.00 | $4,652.00 | Feb-09 |
| 4/10/2009 | Payment #19 | | $600.00 | $4,000.00 | $46.00 | $4,046.00 | Mar-09 |
| 5/10/2009 | Payment #20 | | $600.00 | $3,400.00 | $40.00 | $3,440.00 | Apr-09 |
| 6/10/2009 | Payment #21 | | $600.00 | $2,800.00 | $34.00 | $2,834.00 | May-09 |
| 7/10/2009 | Payment #22 | | $600.00 | $2,200.00 | $28.00 | $2,228.00 | Jun-09 |
| 8/10/2009 | Payment #23 | | $600.00 | $1,600.00 | $22.00 | $1,622.00 | Jul-09 |
| 9/10/2009 | Payment #24 | | $1,600.00 | $0.00 | $16.00 | $16.00 | Aug-09 |
| | **TOTALS** | | $14,701.38 | $206,613.80 | $2,213.15 | $208,826.95 | |

Parkview Nursing Home #41034

**PAYOUT SCHEDULE**
FOR THE PERIOD
November 01, 2006 - August 31, 2007

| *TOTAL JOB SECURITY DUE* | $7,772.41 |
|---|---|

| DUE DATE | | JOB SECURITY | PRINCIPAL BALANCE | PAYOUT INTEREST | TOTAL PAYMENT | CURRENT MONTH TO BE PAID |
|---|---|---|---|---|---|---|
| | | | $ 7,772.41 | | | |
| ######## | payment #1 | $150.00 | $7,622.41 | $ 77.72 | $7,700.13 | Sep-07 |
| ######## | Payment #2 | $150.00 | $7,472.41 | $ 76.22 | $7,548.63 | Oct-07 |
| ######## | Payment #3 | $150.00 | $7,322.41 | $ 74.72 | $7,397.13 | Nov-07 |
| 1/10/2008 | Payment #4 | $150.00 | $7,172.41 | $ 73.22 | $7,245.63 | Dec-07 |
| 2/10/2008 | Payment #5 | $150.00 | $7,022.41 | $ 71.72 | $7,094.13 | Jan-08 |
| 3/10/2008 | Payment #6 | $150.00 | $6,872.41 | $ 70.22 | $6,942.63 | Feb-08 |
| 4/10/2008 | Payment #7 | $150.00 | $6,722.41 | $ 68.72 | $6,791.13 | Mar-08 |
| 5/10/2008 | Payment #8 | $150.00 | $6,572.41 | $ 67.22 | $6,639.63 | Apr-08 |
| 6/10/2008 | Payment #9 | $150.00 | $6,422.41 | $ 65.72 | $6,488.13 | May-08 |
| 7/10/2008 | Payment #10 | $150.00 | $6,272.41 | $ 64.22 | $6,336.63 | Jun-08 |
| 7/10/2008 | Balloon Payment | $1,872.41 | $4,400.00 | $ 62.72 | $4,462.72 | |
| 8/10/2008 | Payment #11 | $150.00 | $4,250.00 | $ 44.00 | $4,294.00 | Jul-08 |
| 9/10/2008 | Payment #12 | $150.00 | $4,100.00 | $ 42.50 | $4,142.50 | Aug-08 |
| ######## | Payment #13 | $300.00 | $3,800.00 | $ 41.00 | $3,841.00 | Sep-08 |
| ######## | Payment #14 | $300.00 | $3,500.00 | $ 38.00 | $3,538.00 | Oct-08 |
| ######## | Payment #15 | $300.00 | $3,200.00 | $ 35.00 | $3,235.00 | Nov-08 |
| 1/10/2009 | Payment #16 | $300.00 | $2,900.00 | $ 32.00 | $2,932.00 | Dec-08 |
| 2/10/2009 | Payment #17 | $300.00 | $2,600.00 | $ 29.00 | $2,629.00 | Jan-09 |
| 3/10/2009 | Payment #18 | $300.00 | $2,300.00 | $ 26.00 | $2,326.00 | Feb-09 |
| 4/10/2009 | Payment #19 | $300.00 | $2,000.00 | $ 23.00 | $2,023.00 | Mar-09 |
| 5/10/2009 | Payment #20 | $300.00 | $1,700.00 | $ 20.00 | $1,720.00 | Apr-09 |
| 6/10/2009 | Payment #21 | $300.00 | $1,400.00 | $ 17.00 | $1,417.00 | May-09 |
| 7/10/2009 | Payment #22 | $300.00 | $1,100.00 | $ 14.00 | $1,114.00 | Jun-09 |
| 8/10/2009 | Payment #23 | $300.00 | $800.00 | $ 11.00 | $811.00 | Jul-09 |
| 9/10/2009 | Payment #24 | $800.00 | $0.00 | $ 8.00 | $8.00 | Aug-09 |
| | TOTALS | $7,772.41 | $107,524.10 | $1,152.97 | $108,677.07 | |

| *TOTAL WORKER PART* | $38,807.81 |
|---|---|

| DUE DATE | | WORKER PART | PRINCIPAL BALANCE | PAYOUT INTEREST | TOTAL PAYMENT | CURRENT MONTH TO BE PAID |
|---|---|---|---|---|---|---|
| | | | $ 38,807.81 | | | |
| ######## | payment #1 | $150.00 | $38,657.81 | $388.08 | $39,045.89 | Sep-07 |
| ######## | Payment #2 | $150.00 | $38,507.81 | $386.58 | $38,894.39 | Oct-07 |
| ######## | Payment #3 | $150.00 | $38,357.81 | $385.08 | $38,742.89 | Nov-07 |
| 1/10/2008 | Payment #4 | $150.00 | $38,207.81 | $383.58 | $38,591.39 | Dec-07 |
| 2/10/2008 | Payment #5 | $150.00 | $38,057.81 | $382.08 | $38,439.89 | Jan-08 |
| 3/10/2008 | Payment #6 | $150.00 | $37,907.81 | $380.58 | $38,288.39 | Feb-08 |
| 4/10/2008 | Payment #7 | $150.00 | $37,757.81 | $379.08 | $38,136.89 | Mar-08 |
| 5/10/2008 | Payment #8 | $150.00 | $37,607.81 | $377.58 | $37,985.39 | Apr-08 |
| 6/10/2008 | Payment #9 | $150.00 | $37,457.81 | $376.08 | $37,833.89 | May-08 |
| 7/10/2008 | Payment #10 | $150.00 | $37,307.81 | $374.58 | $37,682.39 | Jun-08 |
| 7/10/2008 | Balloon Payment | $32,907.81 | $4,400.00 | $373.08 | $4,773.08 | |
| 8/10/2008 | Payment #11 | $150.00 | $4,250.00 | $44.00 | $4,294.00 | Jul-08 |
| 9/10/2008 | Payment #12 | $150.00 | $4,100.00 | $42.50 | $4,142.50 | Aug-08 |
| ######## | Payment #13 | $300.00 | $3,800.00 | $41.00 | $3,841.00 | Sep-08 |
| ######## | Payment #14 | $300.00 | $3,500.00 | $38.00 | $3,538.00 | Oct-08 |
| ######## | Payment #15 | $300.00 | $3,200.00 | $35.00 | $3,235.00 | Nov-08 |
| 1/10/2009 | Payment #16 | $300.00 | $2,900.00 | $32.00 | $2,932.00 | Dec-08 |
| 2/10/2009 | Payment #17 | $300.00 | $2,600.00 | $29.00 | $2,629.00 | Jan-09 |
| 3/10/2009 | Payment #18 | $300.00 | $2,300.00 | $26.00 | $2,326.00 | Feb-09 |
| 4/10/2009 | Payment #19 | $300.00 | $2,000.00 | $23.00 | $2,023.00 | Mar-09 |
| 5/10/2009 | Payment #20 | $300.00 | $1,700.00 | $20.00 | $1,720.00 | Apr-09 |
| 6/10/2009 | Payment #21 | $300.00 | $1,400.00 | $17.00 | $1,417.00 | May-09 |
| 7/10/2009 | Payment #22 | $300.00 | $1,100.00 | $14.00 | $1,114.00 | Jun-09 |
| 8/10/2009 | Payment #23 | $300.00 | $800.00 | $11.00 | $811.00 | Jul-09 |
| 9/10/2009 | Payment #24 | $800.00 | $0.00 | $8.00 | $8.00 | Aug-09 |
| | TOTALS | $38,807.81 | $417,878.10 | $4,566.86 | $422,444.96 | |

| WELFARE | PENSION | EDUCATION | CHILD CARE | JOB SECURITY | WORKER PART |
|---|---|---|---|---|---|
| $609,688.33 | $175,209.30 | $15,453.30 | $14,701.38 | $7,772.41 | $38,807.81 |
| $88,313.12 | $26,037.62 | $2,295.86 | $2,213.15 | $1,152.97 | $4,566.86 |
| $698,001.45 | $201,246.92 | $17,749.16 | $16,914.53 | $8,925.38 | $43,374.67 |

| TOTALS DUE | $861,632.54 |
|---|---|
| PAYOUT INTEREST | $124,579.58 |
| GRAND TOTAL DUE | $986,212.12 |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
--------------------------------------------------------------------------------

JAY SACKMAN and JOHN CHOBOR, and their Successors,          :
as Trustees of the 1199/SEIU GREATER NEW YORK PENSION      :          AFFIDAVIT
FUND, 1199/SEIU GREATER NEW YORK BENEFIT FUND,             :               of
1199/SEIU GREATER NEW YORK EDUCATION FUND, 1199/SEIU :          CONFESSION
GREATER NEW YORK CHILDCARE FUND, 1199/SEIU GREATER :               of
NEW YORK JOB SECURITY, and 1199/SEIU GREATER NEW           :          JUDGMENT
YORK WORKER PARTICIPATION FUND,                            :
                                                          :          INDEX NO.
                              Plaintiffs                   :
                                                          :
                 -against-                                 :
                                                          :
DAVID JONES,                                          :
                              Defendant.                   :
--------------------------------------------------------------------------------

STATE OF NEW YORK          )
                           )    ss.:
COUNTY OF NASSAU           )

          David Jones, being duly sworn, deposes and says:

          1.      Deponent is the co-owner of Parkview Care and Rehabilitation Center (the

"Center") and makes this Affidavit of Confession of Judgment on behalf of himself individually.

          2.      Said defendant confesses that he is jointly and severally liable, along with

Parkview Care and Rehabilitation Center and his co-owner Judi Jones, for the debt and

obligations set forth below, and hereby confesses judgment herein and authorizes entry of

judgment in favor of the above-named plaintiffs against defendant: (a) in the principal sum of

$861,632.53 (which includes interest through October 8, 2007); (b) in an additional sum to be

calculated by counsel for plaintiffs in the event of entry representing interest on the unpaid

principal at the rate of 12% per annum, computed from the date of execution of this Affidavit

through the date of entry of judgment; (c) in the additional sum of $68,930.60 (8% of the

principal amount confessed) representing attorneys' fees due as a result of defendant's default in

making payments required by the Payout Agreement (the "Payout Agreement") pursuant to which

affidavit is given; and (d) in the additional sum of $172,326.50 (20% of the principal amount confessed), representing liquidated damages pursuant to the Payout Award.

3.    Defendant maintains a place of business at 5353 Merrick Road, Massapequa, NY 11758 ((516) 798-1800) and hereby authorizes entry of judgment against it in Nassau and New York Counties.

4.    This Affidavit of Confession of Judgment is for a debt justly due to the plaintiffs from the defendant arising from the following facts: Plaintiffs are Trustees of employee benefit funds that are third-party beneficiaries under collective bargaining agreements between Parkview Care and Rehabilitation Center, of which defendant is co-owner, and 1199/SEIU United Health Care Workers East. Pursuant to the terms of said collective bargaining agreements, Parkview Care and Rehabilitation Center became liable to the 1199/SEIU GREATER NEW YORK PENSION FUND, 1199/SEIU GREATER NEW YORK BENEFIT FUND, 1199/SEIU GREATER NEW YORK EDUCATION FUND, 1199/SEIU GREATER NEW YORK CHILDCARE FUND, 1199/SEIU GREATER NEW YORK JOB SECURITY FUND, and 1199/SEIU GREATER NEW YORK WORKER PARTICIPATION FUND (the "Funds"), for contributions and interest due to the Funds in the amount recited in paragraph "2" of this Affidavit of Confession of Judgment for the period November 1, 2006 up to and including August 31, 2007.

By:_____

Sworn to before me this
____ day of _____2007

_____
NOTARY PUBLIC

2

90060

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
--------------------------------------------------------------------------------

JAY SACKMAN and JOHN CHOBOR, and their Successors,    :
as Trustees of the1199/SEIU GREATER NEW YORK PENSION   :      AFFIDAVIT
FUND, 1199/SEIU GREATER NEW YORK BENEFIT FUND,     :          of
1199/SEIU GREATER NEW YORK EDUCATION FUND, 1199/SEIU :   CONFESSION
GREATER NEW YORK CHILDCARE FUND, 1199/SEIU GREATER :       of
NEW YORK JOB SECURITY, and 1199/SEIU GREATER NEW    :    JUDGMENT
YORK WORKER PARTICIPATION FUND,                 :
                                      :     INDEX NO.

                      Plaintiffs          :
                                        :
               -against-           :
                                        :

PARKVIEW CARE AND REHABILITATION CENTER,
     :
                      Defendant.       :
--------------------------------------------------------------------------------

STATE OF NEW YORK     )
                     )  ss.:
COUNTY OF NASSAU     )

             _____, being duly sworn, deposes and says:

    1.     Deponent is the co-owner of Parkview Care and Rehabilitation Center (the

"Center") and has authority to make this Affidavit of Confession of Judgment on behalf of said

Center.

    2.     Said defendant hereby confesses judgment herein and authorizes entry of

judgment in favor of the above-named plaintiffs against defendant:  (a) in the principal sum of

$861,632.53  (which includes interest through October 8, 2007); (b) in an additional sum to be

calculated by counsel for plaintiffs in the event of entry representing interest on the unpaid

principal at the rate of 12% per annum, computed from the date of execution of this Affidavit

through the date of entry of judgment; (c) in the additional sum of $68,930.60 (8% of the

principal amount confessed) representing attorneys' fees due as a result of defendant's default in

making payments required by the Payout Award (the "Payout Award") pursuant to which this

this affidavit is given; and (d) in the additional sum of $172,326.50 (20% of the principal amount confessed), representing liquidated damages pursuant to the Payout Agreement.

3.    Defendant maintains a place of business at 5353 Merrick Road, Massapequa, NY 11758 ((516) 798-1800) and hereby authorizes entry of judgment against him in Nassau and New York Counties.

4.    This Affidavit of Confession of Judgment is for a debt justly due to the plaintiffs from the defendant arising from the following facts: Plaintiffs are Trustees of employee benefit funds that are third-party beneficiaries under collective bargaining agreements between Parkview Care and Rehabilitation Center, of which defendant is co-owner, and 1199/SEIU United Health Care Workers East. Pursuant to the terms of said collective bargaining agreements, Parkview Care and Rehabilitation Center became liable, and defendant hereby confesses that he is jointly and severally liable, to the 1199/SEIU GREATER NEW YORK PENSION FUND, 1199/SEIU GREATER NEW YORK BENEFIT FUND, 1199/SEIU GREATER NEW YORK EDUCATION FUND, 1199/SEIU GREATER NEW YORK CHILDCARE FUND, 1199/SEIU GREATER NEW YORK JOB SECURITY FUND, and 1199/SEIU GREATER NEW YORK WORKER PARTICIPATION FUND (the "Funds"), for contributions and interest due to the Funds in the amount recited in paragraph "2" of this Affidavit of Confession of Judgment for the period November 1, 2006 up to and including August 31, 2007.

By:_____

Sworn to before me this
_____ day of _____2007

_____
NOTARY PUBLIC

89378

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

------------------------------------------------------------------------

JAY SACKMAN and JOHN CHOBOR, and their Successors,      :
as Trustees of the 1199/SEIU GREATER NEW YORK PENSION   :      AFFIDAVIT
FUND, 1199/SEIU GREATER NEW YORK BENEFIT FUND,          :      of
1199/SEIU GREATER NEW YORK EDUCATION FUND, 1199/SEIU    :      CONFESSION
GREATER NEW YORK CHILDCARE FUND, 1199/SEIU GREATER      :      of
NEW YORK JOB SECURITY, and 1199/SEIU GREATER NEW        :      JUDGMENT
YORK WORKER PARTICIPATION FUND,                         :
                                                        :      INDEX NO.
                              Plaintiffs                :
                                                        :
                   -against-                            :
                                                        :
JUDI[1] JONES,                              :           :
                              Defendant.                :

------------------------------------------------------------------------


STATE OF NEW YORK      )
                       )   ss.:
COUNTY OF NASSAU       )


Judi Jones, being duly sworn, deposes and says:

1.      Deponent is the co-owner of Parkview Care and Rehabilitation Center (the "Center") and makes this Affidavit of Confession of Judgment on behalf of himself individually.

2.      Said defendant confesses that he is jointly and severally liable, along with Parkview Care and Rehabilitation Center and his co-owner Judi Jones, for the debt and obligations set forth below, and hereby confesses judgment herein and authorizes entry of judgment in favor of the above-named plaintiffs against defendant: (a) in the principal sum of $861,632.53 (which includes interest through October 8, 2007); (b) in an additional sum to be calculated by counsel for plaintiffs in the event of entry representing interest on the unpaid principal at the rate of 12% per annum, computed from the date of execution of this Affidavit through the date of entry of judgment; (c) in the additional sum of $68,930.60 (8% of the principal amount confessed) representing attorneys' fees due as a result of defendant's default in

---

[1] is this her legal name? if not, insert legal name (also in payout award)

making payments required by the Payout Award (the "Payout Award") pursuant to which this affidavit is given; and (d) in the additional sum of $172,326.50 (20% of the principal amount confessed), representing liquidated damages pursuant to the Payout Award.

3.    Defendant maintains a place of business at 5353 Merrick Road, Massapequa, NY 11758 ((516) 798-1800) and hereby authorizes entry of judgment against her in Nassau and New York Counties.

4.    This Affidavit of Confession of Judgment is for a debt justly due to the plaintiffs from the defendant arising from the following facts: Plaintiffs are Trustees of employee benefit funds that are third-party beneficiaries under collective bargaining agreements between Parkview Care and Rehabilitation Center, of which defendant is co-owner, and 1199/SEIU United Health Care Workers East. Pursuant to the terms of said collective bargaining agreements, Parkview Care and Rehabilitation Center became liable, and defendant hereby confesses that she is jointly and severally liable, to the 1199/SEIU GREATER NEW YORK PENSION FUND, 1199/SEIU GREATER NEW YORK BENEFIT FUND, 1199/SEIU GREATER NEW YORK EDUCATION FUND, 1199/SEIU GREATER NEW YORK CHILDCARE FUND, 1199/SEIU GREATER NEW YORK JOB SECURITY FUND, and 1199/SEIU GREATER NEW YORK WORKER PARTICIPATION FUND (the "Funds"), for contributions and interest due to the Funds in the amount recited in paragraph "2" of this Affidavit of Confession of Judgment for the period November 1, 2006 up to and including August 31, 2007.

By:_____

Sworn to before me this
_____ day of _____2007

_____
    NOTARY PUBLIC

2

90059